**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,     ) | CR-03-1161-PHX-SRB |
| )      Plaintiff,     ) | **ORDER** |
| )
vs.     ) | |
| )
Jose Verdugo-Munoz,     )
)
Defendant.     )
) | |

At issue is a motion filed by Defendant Jose Verdugo-Munoz to dismiss his indictment (Doc. 87). The motion challenges the grand jury selection process under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and under the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 *et seq.* ("JSSA").

**I.     BACKGROUND**

In November 2003, Defendant was indicted by a Phoenix, Arizona grand jury for possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii).[1] On August 9, 2005, Defendant filed the instant motion to dismiss, arguing that the process employed to select the grand jury that returned his indictment

---

[1] The parties dispute which grand jury panel actually indicted Defendant. The government claims that "Grand Jury 04-1" returned the indictment, whereas Defendant claims it was "Grand Jury 202-1." Ultimately, that dispute is immaterial, as the Court's ruling is the same regardless of which party is correct.

1  violated his right to equal protection of the laws under the Fourteenth Amendment, his right
2  to an impartial jury under the Sixth Amendment, his right to an indictment under the Fifth
3  Amendment, and his right to a grand jury selected from a fair cross-section of the community
4  under the JSSA, 28 U.S.C. § 1861 *et seq.*  The parties completed briefing on Defendant's
5  motion prior to the Ninth Circuit's decision in *United States v. Rodriguez-Lara,* 2005 WL
6  2045777 (9th Cir. Aug. 26, 2005).

## II.     LEGAL STANDARDS AND ANALYSIS

### A.     Sixth Amendment & JSSA

The Sixth Amendment entitles criminal defendants to an impartial jury drawn from a fair cross-section of the community.  U.S. Const. amend. VI; *see Taylor v. Louisiana,* 419 U.S. 522, 536, 95 S. Ct. 692, 700 (1975).  The term "impartial jury" encompasses both grand and petit juries. *See, e.g., United States v. Sanchez-Lopez,* 879 F.2d 541, 546 (9th Cir. 1989). The JSSA helps to ensure jury impartiality by requiring that all juries in federal court (both grand and petit) be "selected at random from a fair cross section of the community," and free from discrimination "on account of race, color, religion, sex, national origin, or economic status." 28 U.S.C. §§ 1861-1862.  The JSSA requires each United States district court to "devise and place into operation a written plan for random selection of grand and petit jurors that shall be designed to achieve the objectives of sections 1861 and 1862." 28 U.S.C. § 1863.

"The test for a constitutionally selected jury is the same whether challenged under the Sixth Amendment of the Constitution or under the Jury Selection and Service Act." *United States v. Sanchez-Lopez,* 879 F.2d 541, 546 (9th Cir. 1989) (quoting *United States v. Miller,* 771 F.2d 1219, 1227 (9th Cir. 1985)).  That test, which also applies in the context of grand juries, *see United States v. Artero,* 121 F.3d 1256, 1260 (9th Cir. 1997), places the initial burden on the defendant to show:

> (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the

- 2 -

|   |   |
|---|---|
| 1 | number of such persons in the community; (3) that this |
| 2 | underrepresentation is due to systematic exclusion of the group in the |
| 3 | jury selection process. |

*Duren v. Missouri,* 439 U.S. 357, 364, 99 S. Ct. 664, 671 (1979). If a defendant makes this prima facie showing, the burden shifts to the government to prove that "a significant state interest [is] manifestly and primarily advanced by those aspects of the jury-selection process . . . that result in the disproportionate exclusion of a distinctive group." *Id.* at 367-68, 99 S. Ct. at 674.

There is no dispute that Defendant satisfies the first prong of *Duren,* as Hispanics are a "distinctive group in the community." *Rodriguez-Lara,* 2005 WL 2045777, at *4 (citing *Sanchez-Lopez,* 879 F.2d at 547 (citations omitted)); *Castaneda v. Partida,* 430 U.S. 482, 495, 97 S. Ct. 1272, 1280 (1977).

The second prong of *Duren* requires a defendant to do more than simply show that in his particular venire, his "distinctive group" was underrepresented. Rather, because of the Supreme Court's use of the plural in describing the second prong of *Duren*, a defendant must proffer evidence that the underrepresentation has occurred in multiple venires. *See Miller*, 771 F.2d at 1228. Here, even assuming that Defendant has shown that his own venire was impermissibly monochromatic, he offers no evidence that other venires in this district have suffered a similar problem. On this basis alone, Defendant's indictment cannot be dismissed.

Defendant also fails to satisfy the third prong of *Duren,* which, while it does not require a showing that the disproportionate exclusion be intentional, the exclusion must be "systematic."[2] *Rodriguez-Lara,* 2005 WL 2045777, at *7 (citing *Randolph v. California,* 380 F.3d 1133, 1141 (9th Cir. 2004)). For example, in *Duren*, the Court found that women were

---

[2]Given the absence of any evidence of underrepresentation in grand jury venires beyond that which returned Defendant's indictment, it becomes very difficult to analyze the third prong of *Duren,* because even assuming that Defendant can point to a systemic flaw in the selection process, there is no evidence of the actual effect that the flaw may have had on the presence of particular distinctive groups in grand jury venires.

- 3 -

1 systematically excluded from venires because, unlike men, they were permitted to opt out of
2 jury service either by filling out a paragraph on their jury questionnaire or simply by not
3 returning the jury questionnaire to the court. *Duren,* 439 U.S. at 361-62, 99 S. Ct. at 667.
4 The underrepresentation of women was "systematic," because it arose from a flaw "inherent
5 in the particular jury-selection process utilized." *Id.* at 366, 99 S. Ct. at 669.

6       Defendant argues that the flaw in the system lies in the method used to select the
7 179,990 members of the grand jury master wheel from the total population of the five
8 included counties, which is about 3.8 million people.  According to Defendant, those 179,990
9 people are chosen by "using a ratio of the total number of voters to the total population for
10 each of the five counties." (Def.'s Mot. at 2.)  Defendant argues that this process is deficient
11 because "it requires a lower percentage of Hispanics for a target percentage," and because
12 it excludes certain eligible citizens who are not registered voters. (Def.'s Mot. at 3.)

13       Defendant's motion falls short on several levels.  First, the portion of Defendant's
14 motion where he sets forth his theory is not supported by a single exhibit, so the Court cannot
15 evaluate whether that method was actually employed to select the grand jury master wheel.
16 *See Rodriguez-Lara,* 2005 WL 2045777, at *7 (noting that a hypothesis as to the cause of
17 underrepresentation without evidence to support it fails to satisfy the third prong of *Duren*);
18 *see also Randolph,* 380 F.3d at 1141 (same).

19       Second, even assuming that the underrepresentation in grand jury venires has been
20 unreasonable, Defendant has offered no evidence connecting the allegedly defective selection
21 method to that unreasonable underrepresentation. *See Rodriguez-Lara,* 2005 WL 2045777,
22 at *7 (concluding that the defendant had not shown systematic exclusion of Hispanics despite
23 evidence from a sociology professor that underrepresentation of Hispanics occurred in
24 judicial division where jury selection plan relied exclusively on voter registration lists, as
25 there was no evidence connecting that reliance to the underrepresentation).

26       Third, as a general matter, the use of voter registration lists as the sole source for
27 selection of grand jurors is not, on its face, problematic.  The JSSA directs that, in
28 formulating a "written plan for random selection of grand and petit jurors," district courts

- 4 -

1 should look first to either voter registration lists or "the lists of actual voters of the political
2 subdivisions within the district or division." 28 U.S.C. § 1863(a), (b)(2).  Only "where
3 necessary to foster the policy and protect" the legislative goals outlined in 28 U.S.C. § 1861
4 and 28 U.S.C. § 1862 are district courts ordered to prescribe "some other source or sources
5 of names."  28 U.S.C. § 1863(b)(2).  Here, where Defendant has offered no significant
6 evidence of pervasive underrepresentation of certain distinctive groups, it does not appear
7 that the jury administrator can be faulted for failing to employ a different method for
8 selecting people for the grand jury master wheel.  *See United States v. Brady,* 579 F.2d 1121,
9 1131 (9th Cir. 1978) (noting that "the legislative history [of the JSSA] indicates that the use
10 of supplemental sources should be used only when the voter lists deviate substantially from
11 the makeup of the local community"); *see, e.g., United States v. Esquivel,* 88 F.3d 722 (9th
12 Cir. 1996) (approving use of random drawing from voter registration lists as a proper method
13 of grand jury selection).

14 Finally, the process of selecting jurors from each county by allegedly "using a ratio
15 of the total number of voters to the total population for each of the five counties" does not
16 appear constitutionally problematic, but seems to be a fair way of ensuring that each county
17 is properly represented in the grand jury master wheel.  Defendant cites no authority that
18 suggests otherwise.

19 As Defendant has failed to satisfy both the second and third prong of *Duren,* his
20 indictment passes constitutional muster under the Sixth Amendment and the JSSA.

25 **B.    Fourteenth Amendment**[3]

---

[3]Technically, Defendant's equal protection argument should have been made under
the Fifth Amendment's Due Process Clause, as the Equal Protection Clause, by its terms,

1  "It is a denial of the equal protection of the laws to try a defendant of a particular race
2  or color under an indictment issued by a grand jury . . . from which all persons of his race or
3  color have, solely because of race or color, been excluded by the State." *Castaneda,* 430
4  U.S. at 492, 97 S. Ct. at 1279 (quotations and citations omitted). A defendant seeking to
5  show that an equal protection violation has occurred in the context of grand jury selection
6  must initially satisfy the following three elements:

7  > The first step is to establish that the group is one that is a recognizable,
8  > distinct class, singled out for different treatment under the laws, as
9  > written or applied. Next, the degree of underrepresentation must be
10 > proved, by comparing the proportion of the group in the total population
11 > to the population called to serve as grand jurors, over a significant
12 > period of time. Finally, . . . a selection procedure that is susceptible of
13 > abuse or is not racially neutral supports the presumption of
14 > discrimination raised by the statistical showing.

15 *Id.* at 494, 97 S. Ct. at 1280.

16  Here, while Defendant satisfies the first element, he comes up short on the second and
17 third. He has made no statistical showing of underrepresentation of Hispanic people "over
18 a significant period of time," nor has he offered any evidence that the selection procedure is
19 susceptible of abuse or is not racially neutral. Accordingly, Defendant's indictment was
20 constitutionally sufficient under the Fourteenth Amendment.

23  **C.    Fifth Amendment**

---

26 applies only to the states. U.S. Const. amend. XIV ("[N]o State shall . . . deny to any person
27 within its jurisdiction the equal protection of the laws."). However, the Equal Protection
   Clause is made applicable to the federal government through the Fifth Amendment's Due
28 Process Clause. *See, e.g., Bolling v. Sharpe,* 347 U.S. 497, 74 S. Ct. 693 (1954).

- 6 -

Defendant also charges that the grand jury selection process violated his Fifth Amendment right to an indictment. No court ever appears to have separately analyzed a grand jury selection process under this clause of the Fifth Amendment, and this Court will not be the first. To the extent that Defendant wishes to challenge his indictment under the Fifth Amendment's Due Process Clause, that argument fails for the reasons discussed in the previous section.

**IT IS ORDERED** denying Defendant's Motion to Dismiss (Doc. 87).

DATED this 12th day of October, 2005.

_____
Susan R. Bolton
United States District Judge